UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 13-CV-4373 (JFB)(WDW)
_____

ALTAIRE PHARMACEUTICALS, INC.,

Plaintiff,

VERSUS

ROSE STONE ENTERPRISES, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
December 3, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Altaire Pharmaceuticals, Inc. ("Altaire" or "plaintiff") commenced this action against Rose Stone Enterprises ("Rose Stone"), Al-Rose Enterprises LLC ("Al-Rose LLC"), and Hub Pharmaceuticals LLC ("Hub") (collectively, "defendants") on February 8, 2013. Plaintiff claims that defendants owe it approximately $7,000,000, which represents the amount of unpaid bills for goods sold and delivered by plaintiff between 2002 and 2012. Based on defendants' alleged failure to pay their bills, plaintiff asserts four causes of action: (1) goods sold and delivered; (2) breach of contract; (3) unjust enrichment; and (4) breach of the covenant of good faith and fair dealing.

Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: (1) there is no federal diversity jurisdiction because plaintiff and Al-Rose LLC are both New York citizens; (2) plaintiff's first and second causes of action are untimely; and (3) plaintiff's third and fourth causes of action are duplicative of its first two. In the alternative, defendants move to transfer this action to the United States District Court for the District of California, where a related action is pending.

For the reasons discussed below, the Court grants defendants' motion to dismiss plaintiff's fourth cause of action as duplicative, but denies defendants' motion in all other respects.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff manufactured pharmaceutical products and sold them at the wholesale level. (Compl. ¶ 9.) Between 2002 and 2012, plaintiff sold its products to defendants, who distributed those products to medical facilities and practices across the country. (*Id.* ¶¶ 10–11, 17.) Plaintiff and defendants' arrangement worked in the following way. A medical facility or practice would order pharmaceutical products from defendants and pay defendants directly. (*Id.* ¶ 11.) After receiving an order, defendants would purchase the products necessary to fill that order from plaintiff by transmitting a purchase order to plaintiff. (*Id.* ¶¶ 11–12.) Then, plaintiff would generate a corresponding sales order, manufacture the products, and ship them either to defendants or to the third party identified by defendants in the purchase order. (*Id.* ¶ 13.) Plaintiff would also send a corresponding invoice to defendants, requesting payment within thirty days of the invoice date. (*Id.* ¶ 14.)

Since 2002, plaintiff has sent defendants invoices amounting to approximately $7,000,000. (*Id.* ¶ 15.) On December 31, 2012, plaintiff sent defendants a summary report specifying each unpaid invoice and the total amount owed. (*Id.*) Since that date, defendants have not paid plaintiff (*id.*), and this lawsuit commenced.

### B. Related California Action

A related action between plaintiff and Rose Stone is pending in the United States District Court for the Central District of California (the "California action"), of which the Court takes judicial notice.[1] There, Rose Stone has filed suit against plaintiff, alleging that it and plaintiff entered into an "Exclusive Distribution Agreement" on or about October 10, 2000, pursuant to which plaintiff agreed to use Rose Stone as the exclusive distributor of an injectable drug product manufactured by plaintiff. (Compl. ¶ 5–6, *Rose Stone Enters. v. Altaire Pharmaceuticals, Inc.*, No. 13-CV-391 (C.D. Cal.) ("Rose Stone Compl.").) In the agreement, Rose Stone claims, plaintiff represented and warranted that, *inter alia*, the product complied with all applicable laws and regulations. (*Id.* ¶ 7.) According to Rose Stone, plaintiff breached the agreement by selling the injectable drug product to two of Rose Stone's customers. (*Id.* ¶ 10.) Moreover, Rose Stone alleges that plaintiff breached its representations and warranties because the Food and Drug Administration ordered plaintiff to cease manufacturing its injectable drug product after determining that the product was an unapproved new drug. (*Id.* ¶ 11.)

In addition, Rose Hub alleges that, when it confronted plaintiff about the breaches of contract sometime in 2007, plaintiff's president told Rose Stone's president, "Stick with me. I will take care of you." (*Id.* ¶¶ 13, 32.) As part of this arrangement, Rose Stone claims that plaintiff agreed not to seek

---

[1] *E.g. Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . ."); *Vaughn v. Consumer Home Mortg. Co., Inc.*, 470 F. Supp. 2d 248, 256 n.8 (E.D.N.Y. 2007) ("It is . . . well established that courts may take judicial notice of court records").

payment for the invoices at issue in the present action. (*Id.*) Rose Stone asserts that plaintiff made these statements to "induce Rose Stone to believe that an amicable adjustment of its claim would be and was being made." (*Id.* ¶ 13.)

Plaintiff moved to dismiss Rose Stone's complaint. The United States District Court for the Central District of California denied plaintiff's motion and stayed the California action pending this Court's determination of subject matter jurisdiction.

### C. Procedural History

Plaintiff filed the complaint in this action on February 8, 2013, in the United States District Court for the Southern District of New York. On July 10, 2013, the Southern District of New York ordered, upon the parties' consent, that the case be transferred to this Court. After the case was transferred, on September 16, 2013, defendants filed a motion to dismiss. Plaintiff filed its opposition to the motion to dismiss on October 16, 2013. Defendants filed a reply to plaintiff's opposition on October 30, 2013. The Court heard oral argument on November 22, 2013. The Court has fully considered the arguments and submissions of the parties.

## II. STANDARDS OF REVIEW

To defeat a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving this issue, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, the court "may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

By contrast, in reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts first to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual

3

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part & rev'd in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (court can consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

III. DISCUSSION

A. Subject Matter Jurisdiction

It is axiomatic that federal courts have diversity jurisdiction only when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants. *See* 28 U.S.C. § 1332; *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84, 88 (2005); *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005).[2] "For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012) (citing 28 U.S.C. § 1332(c)(1)). An LLC, by contrast, "takes the citizenship of each of its members." *Id.* at 49. Subject matter jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004) (internal citations omitted). "This time-of-filing rule . . . measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing . . . ." *Id.*; *see Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 329 (2d Cir. 2001) ("The existence of federal jurisdiction over a case initially filed in federal court ordinarily depends on the facts as they stood when the complaint was filed.").

In the instant case, it is undisputed that plaintiff is a citizen of New York, and that Rose Stone and Hub are citizens of California.[3] Subject matter jurisdiction

---

[2] In addition, the amount in controversy must exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

[3] Plaintiff is a domestic business corporation organized under the laws of New York, with its principal place of business located in Aquebogue, New York. (Compl. ¶ 1.) Rose Stone and Hub are domestic business corporations organized under the laws of California, with their principal places of business located in Rancho Cucamonga, California. (*Id.* ¶¶ 2, 4.)

4

hinges on the citizenship of defendant Al-Rose LLC—specifically, whether plaintiff was a member of Al-Rose LLC at the time it commenced this action. If so, then Al-Rose LLC is also a New York citizen, requiring dismissal for lack of complete diversity under Rule 12(b)(1). If not, then none of the defendants are New York citizens, and complete diversity between the parties exists.

The parties have submitted the following evidence concerning plaintiff's relationship to Al-Rose LLC. In February 2002, plaintiff and Rose Stone signed an operating agreement, which contemplates the formation of an entity named "AlRose Enterprises LLC" under Delaware law. (Scher Decl. Ex. E.) According to that agreement, plaintiff would have owned a 33% interest in AlRose Enterprises LLC, and Rose Stone would have owned the remaining 67% interest. (*Id.*) AlRose Enterprises LLC was never formed, but articles of organization for a different entity, Al-Rose LLC, were filed with the California Secretary of State in April 2002. (Tessler Decl. Ex. E.) Thereafter, on a yearly basis from 2004 to 2009, Al-Rose LLC issued to plaintiff Schedule K-1 Internal Revenue Service forms that list plaintiff as a member with a 33 1/3% interest in Al-Rose LLC. (Scher Decl. Ex. G.) In addition, defendants have proffered two checks representing profit distributions from Al-Rose LLC to plaintiff for the years 2002 and 2005. (Scher Decl. Ex. F.) Al-Rose LLC dissolved in early 2010. (Tessler Decl. Ex. B.) At no point did plaintiff and Rose Stone enter into an operating agreement for Al-Rose LLC.

Plaintiff contends that it could not have been a member of Al-Rose LLC because there is no operating agreement for Al-Rose LLC. Defendants concede that no such operating agreement exists; however, they argue that plaintiff "clearly acted as a 33% member of, and received the benefits from" Al-Rose LLC. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 8.)

"The question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation." *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651 (JPO), 2013 WL 30672, at *2 (S.D.N.Y. Jan. 3, 2013). Here, Al-Rose LLC is a California LLC; accordingly, the Court looks to California law. Defendants contend, without citation to any authority, that in looking to California law, "the Court need look no further than how [plaintiff] and Rose Stone actually behaved." (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 8.) However, defendants overlook clear California law setting forth specific requirements to form an LLC, including the execution of an operating agreement. The relevant California law states,

> In order to form a limited liability company, one or more persons shall execute and file articles of organization with, and on a form prescribed by, the Secretary of State *and, either before or after the filing of articles of organization, the members shall have entered into an operating agreement*. The person or persons who execute and file the articles of organization may, but need not, be members of the limited liability company.

Cal. Corp. Code § 17050(a) (emphasis added). Under California law, an operating agreement is essential to the proper formation of an LLC because the operating

agreement is the "contract among LLC members that govern[s] the members' rights and obligations." *Dunbar v. Willis*, No. D054146, 2010 WL 336406, at *5 (Cal. Ct. App. Mar. 1, 2010). Without it, a court cannot definitively determine an LLC's membership. *See In re Utnehmer*, 499 B.R. 705, 2013 Bankr. LEXIS 4482, at *26 n.9 (B.A.P. 9th Cir. 2013) ("[S]ince no LLC was ever formed and no operating agreement ever drafted, there is no evidence that William would be the managing member with a fiduciary duty to other members."). The articles of organization alone, while enough to create the LLC, *see id.* § 17050(c), do not define the LLC's initial membership. *See id.* § 17050(a) ("The person or persons who execute and file the articles of organization may, but need not, be members of the limited liability company.").

Defendants cite no authority—from California or elsewhere—holding that the membership of a California LLC should be determined by looking to the conduct of the parties rather than the operating agreement. In fact, plaintiff has cited two cases from other jurisdictions, as persuasive authority, suggesting that courts should not recognize "de facto" membership in an LLC based on conduct between the parties where there is no evidence of an actual operating agreement. *See Brown v. MR Grp., LLC*, 693 N.W.2d 138, 144 (Wis. Ct. App. 2005) (where Wisconsin law requires designation of LLC manager "either in the limited liability company's operating agreement or by a vote of the members," holding that "[w]e do not see how such designation can be 'de facto'—[an individual] is either named a manager in the operating agreement or he is not; either the members voted to make him a manager or they did not"); *see also Schott v. Animagic Studios, LLC*, E2003-02287-COA-R3CV, 2004 WL 1813280, at *5 (Tenn. Ct. App. Aug. 16, 2004) (plaintiff not a "member" of Tennessee LLC where "there was no enforceable agreement between Plaintiff and [LLC manager] regarding Plaintiff having an ownership interest in the LLC").

Accordingly, in determining citizenship for purposes of diversity jurisdiction, this Court holds that California law does not contemplate "de facto" membership in a limited liability company; rather, membership is determined by virtue of the operating agreement. Because defendants have conceded in their papers and in oral argument that no operating agreement for Al-Rose LLC exists, plaintiff was not a member of Al-Rose LLC for purposes of assessing diversity jurisdiction. Thus, diversity of citizenship exists among the parties, and the Court has subject matter jurisdiction over this action.

B. Statute of Limitations

Defendants contend that plaintiff's first and second causes of action are time-barred and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Because factual issues remain that could defeat this affirmative defense, the Court concludes that application of the statute of limitations is unwarranted at this juncture.

"Federal courts sitting in diversity are required to follow the statute of limitations rules of the forum state, in this case New York." *Old Country Toyota Corp. v. Toyota Motor Distribs., Inc.*, 966 F. Supp. 167, 168 (E.D.N.Y. 1997) (internal citation omitted). In this case, the parties do not dispute that the four-year statute of limitations set forth in Article 2 of New York's Uniform Commercial Code ("U.C.C.") applies to plaintiff's first and second causes of action. *See* N.Y. U.C.C. Law §§ 2-102 (U.C.C.

6

Article 2 "applies to transactions in goods"), 2-725 ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."). Under the U.C.C., "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 2-725.

Defendants argue that plaintiff's first and second causes of action are time-barred to the extent that they are premised on unpaid invoices due on or before February 9, 2009, over four years after plaintiff filed this action. Plaintiff responds by citing the alleged 2007 agreement, according to which plaintiff "agreed and understood from and after 2007 that these invoices would not be paid, as part of the arrangement by which [plaintiff], through its President, agreed to 'take care of' Rose Stone following [plaintiff's] breaches of [several agreements]." (*See* Rose Stone Compl. ¶¶ 13, 32.) Plaintiff contends that the Court should not apply the statute of limitations until the facts about this alleged arrangement are resolved.

The Court agrees with plaintiff that defendants' statute of limitations argument is premature at this time. "[T]he statute of limitations is an affirmative defense, the determination of which requires a consideration of the merit of both parties' claims and defenses." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010). Because a statute of limitations defense can be highly fact dependent, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010). District courts "have not dismissed actions as untimely on Rule 12(b)(6) motions unless the 'complaint shows *clearly* that a claim is not timely.'" *Id.* at 401–02 (quoting *Robert Smalls Inc. v. Hamilton*, No. 09-7171, 2010 WL 3238955, at *9 (S.D.N.Y. July 19, 2010)) (emphasis in original). Here, an arrangement between plaintiff and Rose Stone concerning payment of the invoices may bear on the applicability of the statute of limitations in this action. The existence and content of any such agreement can be resolved only on a more complete record. Thus, in an abundance of caution, the Court declines to apply the statute of limitations to bar plaintiff's first and second causes of action at this juncture. Of course, if they wish, defendants can raise the statute of limitations issue again at the summary judgment stage once discovery has been completed, including discovery as to this alleged arrangement.

### C. Unjust Enrichment

Defendants maintain that plaintiff's unjust enrichment claim should be dismissed as duplicative because plaintiff has alleged the existence of a valid contract between the parties. The Court recognizes that, as to plaintiff's unjust enrichment claim, it may be asserted only in the absence of an agreement between the parties—be it oral, written, or implied-in-fact. *See, e.g.*, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (citing *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005)). Therefore, if this Court were to find, at a later stage of this litigation, that a "valid and enforceable" agreement governed the subject matter at issue in plaintiff's unjust enrichment claim, such claim would be barred, at least to the extent the quasi-contract claim sought recovery for benefits conferred upon defendants during the pendency of an agreement between the parties. *Id.*

However, at this stage of the case, there is no basis to conclude that this claim should be dismissed as a matter of law. Defendants' position fails to account for Federal Rule of Civil Procedure 8(d), which provides, in relevant part:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. . . . A party may state as many separate claims or defenses as it has, regardless of consistency.

"Federal courts have construed this language to permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (internal citations and quotations marks omitted); *see Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) ("Counts Two and Three for quantum meruit and unjust enrichment were quite properly subsumed by the district court into a single count for restitution, and were properly pleaded as such in the alternative to the contractual claim of Count One.") (citations omitted); *Randolph Equities, LLC v. Carbon Capital, Inc.*, No. Civ. 10889 (PAC), 2007 WL 914234, at *6 (S.D.N.Y. Mar. 26, 2007) ("A plaintiff is not barred from pleading both a contract claim, and in the alternative, a quasi-contract or equitable estoppel claim.").

Of course, following discovery, defendants will be given an opportunity to bring a summary judgment motion on these and any other claims, if they believe the circumstances warrant such a motion.

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, the parties dispute whether plaintiff may assert the breach of the implied covenant of good faith and fair dealing as a separate cause of action.

"In New York, it is well-settled that the common law duty of good faith and fair dealing exists solely as an implicit contractual right; any breach of this duty is therefore considered a breach of the underlying contract." *Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434 (LAK) (AJP), 2012 WL 6136365, at *13 (S.D.N.Y. Dec. 11, 2012), *report & recommendation adopted*, 2013 WL 163826 (S.D.N.Y. Jan. 15, 2013) (citing *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 83 (2d Cir. 2002)). "New York courts do, however, recognize a separate cause of action for breaches of the covenant of good faith and fair dealing 'in cases involving efforts by one party to a contract to subvert the contract itself.'" *Id.* (quoting *Butvin v. DoubleClick, Inc.*, No. 99 CIV 4727 JFK, 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001)); *see, e.g.*, *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012). In the instant case, plaintiff argues that the 2007 agreement, which Rose Stone alleges in the California action, "subverted" the parties' prior contract, such that plaintiff can maintain a separate cause of action for breach of the implied covenant of good faith and fair dealing. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss 12.)

The Court disagrees. "[A]n implied covenant claim requires that 'one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'" *JM Vidal, Inc. v. Texdis USA,*

8

*Inc.*, 764 F. Supp. 2d 599, 620 (S.D.N.Y. 2011) (quoting *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 180–81 (S.D.N.Y. 2007)). Here, as noted, Rose Stone's complaint in the California action alleges that Rose Stone and plaintiff reached an agreement modifying in some way Rose Stone's obligation to pay for plaintiff's products. (Rose Stone Compl. ¶ 32.) However, plaintiff has not alleged—either in its own complaint or by reference to Rose Stone's allegations in the California action—that Rose Stone deprived plaintiff of the benefit of the invoice contracts other than by breaching the contracts and then by seeking to modify the terms of payment. Seeking (successfully or not) to modify the terms of a contract does not deprive the other party of his or her contractual benefits. *See Resolution Trust Corp. v. Lesal Assocs.*, No. 91 Civ. 2025 (MBM), 1992 WL 98843, at *5 (S.D.N.Y. May 6, 1992) ("[S]o long as the promisee is allowed to reap the benefits of the contract, the implied covenant of good faith does not require the promisor to take actions contrary to his own economic interest such as modifying the terms, or even negotiating the possible modification of the terms of, a risky loan."). In short, plaintiff has failed to allege any plausible set of facts supporting a separate cause of action for breach of the implied covenant of good faith and fair dealing. Plaintiff's fourth cause of action amounts only to a claim that defendants subverted the invoice contracts by breaching them; it is thus subsumed by plaintiff's breach of contract claim. Therefore, the Court dismisses plaintiff's fourth cause of action. *See, e.g.*, *Harris*, 310 F.3d at 83.

E. Defendants' Motion to Transfer

Finally, defendants argue in a footnote that the Court should transfer this case to the United States District Court for the Central District of California, where the California action is pending. (*See* Defs.' Mem. of Law in Support of Mot. to Dismiss 8 n.4.) Based upon the current record, that motion is denied.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has "broad discretion" in determining "notions of convenience and fairness" under § 1404(a). *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 347 (E.D.N.Y. 2012). In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of Am.*, 984 F. Supp. 757, 764 (S.D.N.Y. 1997)) (other citations omitted). To decide whether the transfer would promote the convenience of parties and witnesses, the court considers the following factors: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; and (7) the relative means of the parties. *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 348 (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). The party moving for transfer "bears the burden of showing that transfer is warranted in light of these factors." *Id.*

9

Here, defendants—whose argument for transfer is confined to a brief footnote—have not met their burden of showing that transfer of the instant action is warranted. In fact, the footnote does not address the above-referenced factors in any meaningful manner. Thus, the Court denies defendants' motion to transfer based upon the current record.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff's fourth cause of action, and denies defendants' motion to dismiss plaintiff's first, second, and third causes of action. The Court also denies defendants' motion to transfer this action to the Central District of California.

SO ORDERED.

———————————

JOSEPH F. BIANCO
United States District Judge

Dated: December 3, 2013
 Central Islip, New York

\* \* \*

Plaintiff is represented by Edward Tessler and Jeffrey L. Schulman, Dickstein Shapiro LLP, 1633 Broadway, New York, NY 10019. Defendants are represented by Robert A. Scher and Douglas S. Heffer, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016.